RECEIVED

MAR 2 2 2017

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MYRON L. BUTLER | CIVIL ACTION NO. 15-2313 |
| VERSUS | JUDGE DOHERTY |
| SUPERIOR ENERGY SERV., INC., ET AL. | MAGISTRATE JUDGE WHITEHURST |

### MEMORANDUM RULING

Pending before this Court is the Motion for Summary Judgment [Doc. 14] filed by defendant/cross-claimant Seacor Liftboats, Inc., which avers "there is no genuine issue of material fact that co-Defendant Superior Energy Services, LLC ["Superior] owes SEACOR Liftboats defense, indemnity, and insurance coverage from the claims of Plaintiff Myron L. Butler." Therefore, Seacor seeks "judgment as a matter of law on its cross claim against Superior Energy Services, LLC." Superior opposes the motion [Doc. 16], and Seacor filed a Motion for Leave to File a Reply Brief (Doc. 17], which is herein GRANTED. Seacor's Motion for Leave to File a Rule 7.4.1 Certificate [Doc. 18] is also GRANTED, as is Superior's Motion for Leave to File a Sur-Reply Brief [Doc. 20]. For the following reasons, Seacor's motion for summary judgment is GRANTED IN PART and DENIED IN PART for the reasons stated below.

I.  **Factual and Procedural Background**

The instant litigation involves a lawsuit for personal injuries allegedly sustained by plaintiff onboard the SEACOR LIBERTY on April 23, 2014. Plaintiff alleges that, at the time of his accident, he was attempting to maneuver a section of pipe being transferred by crane from the SEACOR LIBERTY to a platform. The SEACOR LIBERTY was being used to transport workers

and materials to McMoRan's offshore platform located in block 193 of the West Cameron field on the Outer Continental Shelf in the Gulf of Mexico. Superior was under contract to provide services and labor to McMoRan to assist in plugging and abandoning the oil and gas well at that platform. Once in position, the SEACOR LIBERTY housed workers of other McMoRan contractors (such as Superior) and stored materials for the work being performed on the adjacent platform.

The following facts are undisputed:

- Seacor had a contract (the "time charter") with Freeport - McMoRan Oil & Gas, LLC ("McMoRan") for the charter of SEACOR's liftboat SEACOR LIBERTY.

- Pursuant to the time charter between Seacor and McMoran, the SEACOR LIBERTY was provided to McMoran. With respect to the use of vessel, the time charter between Seacor and McMoran states as follows: "The vessels shall be used for the lawful transportation of materials, supplies, equipment and personnel incidental to Charterer's (McMoran's) operations in the exploration for and the production of oil and gas."

- Superior was under contract to provide services and labor to McMoRan to assist in plugging and abandoning the oil and gas well at that platform.

- Once in position, the SEACOR LIBERTY housed workers of other McMoRan contractors (such as Superior) and stored materials for the work being performed on the adjacent platform.

- As a contractor of McMoran, Superior was required to sign a Vessel Boarding Agreement ("VBA") with SEACOR as a condition of being allowed to use the SEACOR LIBERTY. The VBA that Superior signed is dated May 25, 2012.

- The VBA between Seacor and Superior states:

    The purpose of the agreement is to provide Contractor ("Superior") access to the vessels owned, chartered and/or operated by Owner ("Seacor"), its subsidiaries and affiliates (the Vessels") and further, to provide employees of Contractor with transportation, working, living or operating support aboard the Vessels and to allocate the risks and liabilities arising out of Owner granting to Contractor access to and services aboard the Vessels.

- The VBA further states:

    **II.   INDEMNITIES**

    A.  **Owner Indemnities** OWNER [SEACOR] AGREES TO INDEMNIFY CONTRACTOR GROUP [SUPERIOR] AGAINST ANY AND ALL CLAIMS FOR ILLNESS, INJURY AND/OR DEATH, PROPERTY DAMAGE, LOSS OF EQUIPMENT, OR OTHERWISE THAT MAY BE ASSERTED BY OWNER GROUP [SEACOR] OR OWNER GROUP EMPLOYEES, RESULTING FROM, ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR INCIDENT TO, DIRECTLY OR INDIRECTLY, THE SERVICES;[1] AND WHETHER OR NOT ANY CLAIM SHALL ARISE, IN WHOLE OR IN PART, OR BE CAUSED BY THE SOLE, JOINT OR CONCURRENT NEGLIGENCE OR OTHER FAULT OF ANY PARTY, INCLUDING CONTRACTOR GROUP, OR BY ANY LEGAL THEORY, INCLUDING BUT NOT LIMITED TO STRICT LIABILITY, ASSIGNED TO CONTRACTOR GROUP. OWNER FURTHER AGREES TO INDEMNIFY CONTRACTOR GROUP AGAINST ANY AND ALL CLAIMS BY CONTRACTOR GROUP'S CUSTOMER FOR CONTRACTUAL INDEMNITY OBLIGATIONS ARISING OUT OF OR RELATED TO ANY AND ALL CLAIMS DESCRIBED IN THE PRECEDING SENTENCE OF THIS SECTION II.A.

    [ . . . ]

    B.  **Contractor Indemnities CONTRACTOR [SUPERIOR] AGREES TO INDEMNIFY OWNER GROUP [SEACOR] AGAINST ANY AND ALL CLAIMS FOR ILLNESS, INJURY AND/OR DEATH, PROPERTY DAMAGE, LOSS OF EQUIPMENT, OR OTHERWISE THAT MAY BE ASSERTED BY OWNER GROUP OR OWNER GROUP EMPLOYEES, RESULTING FROM, ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR INCIDENT TO, DIRECTLY OR INDIRECTLY, THE SERVICES;** AND WHETHER OR NOT ANY CLAIM SHALL ARISE, IN WHOLE OR IN PART, OR BE CAUSED BY THE SOLE, JOINT OR CONCURRENT NEGLIGENCE OR OTHER FAULT OF ANY PARTY, INCLUDING OWNER GROUP, OR BY ANY LEGAL THEORY, INCLUDING BUT NOT LIMITED TO STRICT LIABILITY, ASSIGNED TO OWNER GROUP OR BY THE UNSEAWORTHINESS OF ANY VESSEL. CONTRACTOR FURTHER AGREES TO INDEMNIFY OWNER GROUP AGAINST ANY AND ALL CLAIMS BY OWNER GROUP'S CUSTOMER

---

[1] "Services" is defined in the VBA as "services contemplated or occurring under the Agreement, or connected with the ownership, maintenance, management, operation, transportation of passengers or cargo, loading or unloading of passengers or cargo, or the navigation of the Vessels under the Agreement."

> FOR CONTRACTUAL INDEMNITY OBLIGATIONS ARISING OUT OF OR RELATED TO ANY AND ALL CLAIMS DESCRIBED IN THE PRECEDING SENTENCE OF THIS SECTION II.B. CONTRACTOR'S OBLIGATION TO INDEMNIFY OWNER GROUP SHALL EXTEND TO ANY REASONABLE ATTORNEY FEES AND LEGAL EXPENSES RELATING TO THE CLAIM, AND INCLUDES ANY REASONABLE ATTORNEY FEES OR LEGAL EXPENSES RELATED TO SUCCESSFULLY ENFORCING THE PROVISIONS OF THE AGREEMENT (emphasis added).

- The plaintiff was "employed by Superior Energy Services, LLC . . . assisting with the temporary abandonment of well #1 aboard a fixed oil and gas platform owned by McMoRan Oil & Gas located on the outer continental shelf."

- The plaintiff alleges he was injured on the platform on April 23, 2014 while attempting to maneuver a section of pipe being transferred by crane from the SEACOR LIBERTY to the platform.

- On September 1, 2015, plaintiff filed this lawsuit against Superior and Seacor.

- Pursuant to the VBA, Seacor demanded defense, indemnity, and insurance coverage from Superior, but was refused.

- Thereafter, Seacor answered the plaintiff's complaint and filed a cross claim against Superior.

- In its answer to the cross claim, Superior denied it is contractually obligated to Seacor for defense, indemnity, and insurance coverage, and asserted, *inter alia*, that SEACOR's claim is barred by the Louisiana Oilfield Indemnity Act ("LOIA"), La. R.S. 9:2780, and/ or Section 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA").

Once it was named in the lawsuit as a defendant, Seacor filed a cross-claim against Superior alleging "[t]he [VBA] provided for mutual indemnities, with Superior obligated for defense and indemnity of SEACOR for injuries to Superior's personnel – in this case Butler."[2] Superior has denied Seacor's claim, arguing Seacor's claim is barred by the LOIA, and/or Section 905(b) of the Longshore and Harbor Worker's Compensation Act ("LHWCA").

---

[2] *See* Answer and Crossclaim of Seacor, Doc. 8, at ¶3.

In the instant motion for summary judgment, Seacor argues "there is no genuine issue of material fact that co-Defendant Superior Energy Services, LLC ["Superior] owes SEACOR Liftboats defense, indemnity, and insurance coverage from the claims of Plaintiff Myron L. Butler," on the basis that the VBA between Seacor and Superior is a maritime contract that is not subject to the Louisiana Oilfield Indemnity Act, La. Rev. Stat. 9:2780 ("LOIA"). Therefore, Seacor seeks "judgment as a matter of law on its cross claim against Superior Energy Services, LLC." In opposition, Superior argues Seacor has not met its burden to show the VBA is a maritime contract, and that disputed facts prevent this issue from being determined at this time. Superior suggests Louisiana law, rather than maritime law, governs the VBA, and if it is ultimately decided that Louisiana law does govern, the LOIA renders the defense and indemnity clause relied upon by Seacor void and unenforceable.

After consideration of the record and the arguments of the parties, this Court concludes the VBA in question is a maritime contract, and consequently, is not subject to the LOIA, however whether Superior actually owes Seacor defense, indemnity, and insurance coverage pursuant to that contract, remains to be determined. First, Superior, also, argues applicability of Sections 905(b) and (c) of the LHWCA. Additionally, whether any other contractual impediment might apply has not been presented or argued to this Court in this procedural vehicle. Rather, this Court determines, only, that the contract at issue is a maritime contract, and thus, the LOIA does not apply to the contract at issue, and the provisions of the LHWCA – Sections 905(b) and (c) do not preclude the argued contractual provisions.

**II.    Summary Judgment Standard**

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory

judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. Proc. 56(e).

> As the Fifth Circuit has pointed out:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." Id. In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis."

Id. To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party *that the jury is not required to believe*, and should give credence to the evidence favoring the non-moving party, *as well as that evidence supporting the moving party that is uncontradicted and unimpeached*." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001) (emphases added).

### III.  Law and Analysis

#### 1.  What law applies to the VBA

Seacor argues "there is no genuine issue of material fact that co-Defendant Superior Energy Services, LLC ["Superior] owes SEACOR Liftboats defense, indemnity, and insurance coverage from the claims of Plaintiff Myron L. Butler." Therefore, Seacor seeks "judgment as a matter of law on its cross claim against Superior Energy Services, LLC."

The first issue raised in the pending motion is what law applies to the contract, which will govern whether the LOIA is applicable. Superior alleges the contract cannot yet be determined to be maritime or not maritime and thus the LOIA could apply by way of the OCSLA, barring any claims by Seacor for defense and indemnity. Seacor alleges the LOIA is not applicable, as maritime law applies to the VBA contract. It appears to be undisputed that if the contract is a maritime contract, federal maritime law applies and the LOIA would not be applicable and thus would not act to bar the validity of the defense and indemnity provision in the contract. However, if the contract is non-maritime in nature, OCSLA likely would apply, and thus Louisiana law – as the law of the adjacent state – likely would apply and the LOIA could operate to invalidate the defense and indemnity provision of the VBA.

Thus, the parties' dispute centers on whether the defense and indemnity provision of the May

25, 2012 VBA is valid, first, as a matter of law. To decide that, this Court must first determine what body of law governs *the contract*. Seacor argues the contract is governed by the general maritime law; Superior argues there are disputed facts that preclude a determination of what law governs the VBA, but suggests the contract is governed by Louisiana law by virtue of OCSLA. It is undisputed that if Louisiana law is applicable, the LOIA could act to invalidate the defense and indemnity provision at issue. This Court concludes the question of what law applies is a matter of law for the Court's determination; the determination is one to be made based upon *the contract* in question. Therefore, this Court makes the determination of what law applies.

First, by way of context only, OCSLA was enacted in 1953 to extend the jurisdiction and control of the United States government to the seabed and subsoil of the outer Continental Shelf and to its natural resources, to wit:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: *Provided, however*, That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.

43 U.S.C. §1333(a)(1). OCSLA goes on to provide in pertinent part:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, ***the civil and criminal laws of each adjacent State***, now in effect or hereafter adopted, amended, or repealed ***are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf***, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . .

43 U.S.C.A. §1333(a)(2)(A) (emphasis added). Therefore, "OCSLA adopts the law of the adjacent

state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations." *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003); *see also* 43 U.S.C. §1333(a)(2)(A).

The law of the adjacent state, Louisiana, has promulgated the LOIA, which provides in pertinent part:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals ... is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee."

La. Rev. Stat. §9:2780(B) (West 2009).

The general maritime law, or law of the admiralty exists by way of historical application and provides its own jurisprudential context. The question at hand keys to the nature of the contract involved. Seacor argues the question of whether a VBA, such as the one at issue, is subject to the LOIA or is a maritime contract has been definitively answered in the negative by the Fifth Circuit in *Johnson v. SEACOR Marine*, 404 F.3d 871 (5th Cir. 2005). In *Johnson*, the plaintiff's employer, PMI, was under contract with an oil company to provide services and labor for the oil company's platforms. Seacor was also under contract with the oil company to deliver equipment, supplies, and personnel to the platform. After PMI's employee was injured during a transfer between the platform and the vessel and brought suit against Seacor, Seacor demanded defense, indemnity, and insurance coverage from PMI, but was rejected. Like Superior, PMI asserted that the indemnity and insurance provisions of the Seacor VBA were unenforceable pursuant to LOIA. The Fifth Circuit rejected this argument and held the VBA was supported by consideration and was a legally enforceable contract

and maritime in nature. *Johnson*, 404 F.3d at 877.

Seacor argues the provisions of the VBA in *Johnson* are identical to the provisions of the VBA in the instant case. However, the precise language of the VBA in *Johnson* is not provided in the case, consequently this Court does not have the benefit of the precise language involved in that contract. In the instant case, the purpose of the VBA is stated as follows:

> The purpose of the agreement is to provide Contractor ("Superior") access to the vessels owned, chartered and/or operated by Owner, its subsidiaries and affiliates (the Vessels") and further, to provide employees of Contractor with transportation, working, living or operating support aboard the Vessels and to allocate the risks and liabilities arising out of Owner ("Seacor") granting to Contractor access to and services aboard the Vessels.

Id. at 874.

The facts of *Johnson* appear to show the plaintiff was injured while being transported between the platform in question and the vessel provided by the contractor. On the question of the applicability of the LOIA, the *Johnson* court held:

> PMI argues next that the VBA's indemnity terms are not enforceable under the Louisiana Oilfield Anti-Indemnity Act. SEACOR argues that this Louisiana statute has no application to the VBA because it is a maritime contract. This issue was clearly resolved by this Court's opinion in *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1231 (5th Cir.1985).
>
> In *Laredo*, this Court held that "[a]n agreement to transport people and supplies in a vessel to and from a well site on navigable waters is clearly a maritime contract". *Laredo* at 1231, citing *Hale v. Co-Mar Offshore Corp.*, 588 F.Supp. 1212, 1215 (W.D.La.1984). Because the agreements at issue in this case are solely for the transportation of employees to and from the platforms, *Laredo* controls and we hold that the VBA is a maritime contract which renders the indemnification provisions valid. *See Hollier v. Union Tex. Petroleum Corp.*, 972 F.2d 662, 664 (5th Cir.1992).

404 F.3d at 877.

In the instant matter, Superior agrees *Johnson* stands for the proposition that the LOIA does not preclude enforcement of the indemnification terms of a VBA *with a scope that solely involved*

-10-

*the transportation of employees in a vessel in navigable waters*. However, Superior argues because the scope of Superior's work under the VBA was much broader than vessel transportation, and because Butler was injured on the McMoran fixed platform during a lifting operation - a fact certainly relevant to a tort analysis, but less relevant to a contractual analysis - using the vessel/liftboat's crane, and not while being transported to or from the platform, Louisiana law would appear to govern *the VBA, the contract*, and the LOIA would invalidate the indemnification provisions *of the contract*.

This Court disagrees. Fist, one must not conflate those considerations called for in tort analysis to one of contract. Furthermore, the fact that the purpose of the VBA between Seacor and Superior might be broader in scope than the VBA in *Johnson* does not, *necessarily*, take the instant case out of the realm of *Johnson*, which held a similar VBA was a maritime contract. Indeed, in the instant case, the VBA extends to provide employees of Superior with "transportation, working, living or operating support *aboard the Vessels*" (emphasis added). In order to determine whether the "work" *that the liftboat* was performing is maritime in nature, this Court is informed by the nature of the contract between McMoran and Seacor for the liftboat. The record shows the liftboat in question was provided by Seacor for McMoran *pursuant to a time charter*, the purpose of which was to provide for the "lawful transportation of materials, supplies, equipment and personnel incidental to [McMoran's] operations in the exploration for and the production of oil and gas," clearly a maritime mission.

It is well-settled in the Fifth Circuit that time charters are maritime contracts, which come within federal maritime jurisdiction. *See Angelina Cas. Co. v. Exxon Corp., U.S.A., Inc.*, 701 F.Supp. 556, 558 (E.D. La. Oct. 26, 1988), *citing Kossick v. United Fruit Co.*, 365 U.S. 731, 735,

81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961). Thus, to the extent the liftboat in question was provided by Seacor for the purpose of the performance of maritime services, and as the VBA itself is a contract that addresses the use and boarding of *the vessel*, this Court concludes the VBA in question does not fall outside the purview of *Johnson*, and the VBA in the instant matter is a maritime contract. Therefore this Court concludes the VBA is a maritime contract and as such, maritime law applies to that contract. Therefore the OCSLA does not apply to this contract, and therefore Louisiana law does not apply to the VBA, and therefore the LOIA, also, does not apply and is, therefore, not applicable.

### 2. LHWCA

As a defense to Seacor's claim for defense and indemnity, Superior, also, argues the VBA is unenforceable pursuant to Section 905(b)[3] of the LHWCA. Seacor, however, actually argues the

---

[3] Section 905(b) states:

(b) Negligence of vessel

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C. §905(b).

exception contained in §905**(c)**, which addresses reciprocal indemnity agreements[4] applies and argues the prohibition of 905(c). Superior's argument is two-pronged: (1) first, Superior argues the LHWCA applies only to non-seamen employed on the outer continental shelf, and that because the plaintiff claims to be a Jones Act seaman, there are questions of material fact that preclude a determination of whether the LHWCA bars the indemnity provisions at issue; (2) second, Superior argues that pursuant to Fifth Circuit jurisprudence, the reciprocal indemnity agreement in question must be between the employer and the vessel in its capacity as vessel owner. In this case, Superior argues Seacor admits it had a contract with McMoran pertaining to a well, and the vessel was, in fact, used to support the temporary plugging and abandonment of the WC 193 #1 well. Thus, Superior argues there are unresolved questions as to whether Seacor, in contracting with Superior, was acting in its capacity as vessel owner, or only as a contractor of McMoran.

This Court concludes both of Superior's arguments are misplaced. First, with respect to Superior's argument that because the plaintiff claims to be a Jones Act seaman, there are questions of material fact that preclude a determination of whether the LHWCA bars the indemnity provisions at issue, the Court concludes this argument is not persuasive. The plaintiff is either a Jones Act

---

[4] Section 905(c) states:

(c) Outer Continental Shelf

In the event that the negligence of a vessel causes injury to a person entitled to receive benefits under this Act by virtue of section 1333 of Title 43, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel in accordance with the provisions of subsection (b) of this section. Nothing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a person entitled to receive benefits under this chapter by virtue of section 1333 of Title 43 and the vessel agree to defend and indemnify the other for cost of defense and loss or liability for damages arising out of or resulting from death or bodily injury to their employees.

33 U.S.C. §905(c).

seaman, or he is not. If he is a Jones Act seaman, as alleged, the LHWCA does not apply *as to the plaintiff's recovery*, however, even if this Court were to accept Superior's argument - which it does not for reasons this Court need not express at this time - if the LHWCA were not to apply - its provisions would, therefore, not act to bar the indemnity provisions. However, under Superior's argument, if the plaintiff is *not* a Jones Act seaman, then Superior argues by inference, the exception contained in §905(c) of the LHWCA would apply. Even if this Court were to assume that was the case, under the language of §905(c), reciprocal indemnity provisions are not barred, thus, the LHWCA would, in that instance, not act to bar the indemnity provisions as well. Thus, under either prong of Superior's argument, the LHWCA would not bar application of the indemnity provisions of the VBA.

Consequently, Superior's argument that there are unresolved *factual* questions as to whether Seacor, in contracting with Superior, was acting in its capacity as vessel over, or only as a contractor of McMoran, is, again, unpersuasive. Here, the agreement in question is the Vessel Boarding Agreement *between Seacor and Superior*. This Court has concluded the contract to be a maritime contract. Thus, maritime law governs the contract and even if one were to assume the LHWCA were to apply - §905(c) would not bar a reciprocal provision contract such as those in the VBA. Thus, Superior's argument must fail. However, the relief requested by Seacor is overly broad. Whether the actual contractual language is otherwise enforceable, is not a matter raised by the arguments made by the parties and this Court declines to reach beyond the findings noted - the VBA is a maritime contract; the LOIA does not apply and assuming §905(c) were to apply, it would not, as a matter of law, vitiate the reciprocal indemnity agreement.

**IV. Conclusion**

Considering the foregoing,

IT IS ORDERED that the Motion for Summary Judgment [Doc. 14] filed by defendant/cross-claimant Seacor Liftboats, Inc. is GRANTED IN PART and DENIED IN PART. It is GRANTED to the extent that this Court concludes that maritime law governs the Vessel Boarding Agreement between Seacor and Superior, and the defense and indemnity provisions contained therein are not barred by the LOIA, nor would they be barred by §905(c), if applicable. This Court is unable to determine whether other provisions of the Vessel Boarding Agreement might impact the defense and indemnity provisions, therefore, this Court concludes only that the provisions are not vitiated by the application of the LOIA, nor §905(c) of the LHWCA.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 22nd day of March, 2017.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE